UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NORTH AMERICAN SPECIALTY
INSURANCE COMPANY INCORPORATED,
    Plaintiff,

v.    Case No. 8:18-cv-784-T-24 JSS

THE ARTEC GROUP, INC., LOUIS SANCHEZ,
and LOUIS H. SANCHEZ REVOCABLE
TRUST,
    Defendants.
_____/

**ORDER**

This cause comes before the Court on Plaintiff's Motion for Default Judgment as to Defendants The Artec Group, Inc. and the Louis H. Sanchez Revocable Trust and Motion for Summary Judgment as to Defendant Louis Sanchez.[1] (Doc. No. 20). The Court held a hearing on this motion on October 10, 2018 and directed Defendant Louis Sanchez to appear. The Court warned Sanchez that if he failed to appear, the Court would deem the motion for summary judgment to be unopposed by him. (Doc. No. 26). Sanchez failed to appear at the hearing, and as such, the motion for summary judgment is deemed unopposed.

**I. Standard of Review - Motion for Summary Judgment**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. See Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir. 2006)(citation omitted). The moving party bears the initial burden of

---

[1] The Clerk has entered default against Defendants The Artec Group, Inc. and the Louis H. Sanchez Revocable Trust. (Doc. No. 22, 23).

showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  See id. (citation omitted).  When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial.  See id. (citation omitted).

**II.  Background**

This is an action for indemnity relating to claims made against three sets of Performance and Payment Bonds issued by Plaintiff North American Specialty Insurance Company, Inc. ("NAS") in favor of Defendant The Artec Group. Inc. ("Artec").  NAS contends that Artec, along with Defendants Louis Sanchez and the Louis H. Sanchez Revocable Trust, agreed to indemnify NAS for all losses and expenses relating to these three sets of bonds.

**A.  The Pinellas County Project and Bonds**

NAS issued the first set of Performance and Payment Bonds in March of 2016, and the bonds relate to a Pinellas County airport terminal project ("Pinellas Project").  (Doc. No. 1-1). The Bonds list Artec as the principal and a penal sum amount of $8,932,979 (Doc. No. 1-1).  The following year, Pinellas County claimed that Artec breached their agreement for the Pinellas Project, and Pinellas County terminated the contract for the Pinellas Project on October 31, 2017. (Doc. No. 20-1, ¶ 8).  In December of 2017, Pinellas County made a formal demand on NAS to perform its obligations under the Performance Bond.  (Doc. No. 20-1, ¶ 7).  Additionally, NAS has received numerous claims against the Payment Bond.  (Doc. No. 20-1, ¶ 8).

**B.  The Volusia County Project and Bonds**

NAS issued the second set of Performance and Payment Bonds in January of 2016, and

the bonds relate to a Volusia County airport improvement project ("Volusia Project"). (Doc. No. 31-1). The Bonds list Artec as the principal and a penal sum amount of $6,190,053 (Doc. No. 31-1). By February of 2018, Artec contacted NAS asking for NAS's assistance in providing funds so that Artec could finish the Volusia Project. (Doc. No. 20-1, ¶ 11). NAS has received numerous claims against the Payment Bond. (Doc. No. 20-1, ¶ 12).

### C. The U.S. Navy Project and Bonds

NAS issued the third set of Performance and Payment Bonds in July of 2016, and the bonds relate to a contract that Artec entered into with the U.S. Navy for work to be done in Florida. (Doc. No. 20-1, ¶ 13; Doc. No. 34). The Bonds list Artec as the principal and a penal sum amount of $12,228,057.44. (Doc. No. 34). NAS has received claims against the Payment Bond. (Doc. No. 20-1, ¶ 15).

### D. The General Indemnity Agreement

On May 15, 2015, Defendants Artec and Louis Sanchez signed a General Indemnity Agreement ("GIA"). (Doc. No. 1-4). The GIA states that it "shall cover all Bonds that have been and as may hereafter be applied for or executed on behalf of" Artec and Sanchez ("Indemnitors"). (Doc. No. 1-4). The GIA provides that "[t]he Indemnitors shall exonerate, hold harmless and indemnify [NAS] from and against any and all Loss." (Doc. No. 1-4). Losses under the GIA include any liability, including attorneys' fees, incurred by NAS due to NAS's issuance of surety bonds. (Doc. No. 1-4). The GIA also provides that the Indemnitors' liability is joint and several. (Doc. No. 1-4).

The GIA also addresses the issue of collateral security. The GIA provides that "[u]pon demand of [NAS], the Indemnitors shall immediately deposit with [NAS] a sum of money as

3

collateral security on the Bonds. (Doc. No. 1-4). NAS's right to demand collateral security can be triggered by various events, including NAS receiving a claim against the payment bonds. (Doc. No. 1-4). With regard to the amount of collateral security that NAS may demand, the GIA provides the following:

> The collateral security shall be equal to the liquidated amount stated in any claim or demand plus the amount that [NAS] deems sufficient to cover [NAS's] estimate of the costs and expenses to defend, investigate and adjust the claim or demand. If any claim or demand does not expressly state a specific amount, then the collateral payment to [NAS] shall be in an amount [NAS] deems sufficient to protect it from Loss related to the investigation, adjustment, payment and defense of the claim.

(Doc. No. 1-4).

The following year, Defendant Louis H. Sanchez Revocable Trust ("the Trust") executed an addendum to the GIA, effective July 22, 2016. (Doc. No. 28-1). The addendum provides that it "is attached to, made part of, and incorporated into the [GIA]." (Doc. No. 28-1). The addendum further provides that the Trust agrees to be bound by the GIA as if it had entered into the GIA as of July 22, 2016. (Doc. No. 28-1).

### E. NAS's Claims Against Defendants

NAS filed suit against Defendants on April 2, 2018. NAS asserts seven claims in its complaint.[2] (Doc. No. 1). Five of the claims are against all three of the defendants: (1) specific performance to require Defendants to post collateral; (2) specific performance to give NAS access to Defendants' books, records, and accounts; (3) contractual exoneration; (4) contractual indemnification; and (5) quia timet. NAS asserts two additional claims against Artec: (1)

---

[2]The seventh claim is referred to as Count VIII in the complaint.

common law exoneration and (2) common law indemnification.

### III. Motion for Default Judgment and Summary Judgment

At the hearing, NAS stated that its motion is directed to only two of its claims: (1) specific performance to require Defendants to post collateral - Count I; and (2) contractual indemnification - Count V. As explained below, the Court finds that NAS is entitled to judgment on both claims.

#### A. Collateral

In Count I, NAS asks the Court to order specific performance to require Defendants to post collateral. A decree of specific performance is an equitable remedy that the Court may grant if it believes that justice so requires it and NAS establishes two things: (1) that NAS is clearly entitled to such relief; and (2) that there is no adequate remedy at law. See American Southern Ins. Co. v. Environmental Innovations, Inc., 2015 WL 3863635, at *5 (M.D. Fla. June 22, 2015); Allegheny Cas. Co. v. United Construction Co. of Central Fla., Inc., 2014 WL 440083, at *7 (M.D. Fla. Feb. 3, 2014); Travelers Cas. & Surety Co. of America v. Industrial Commercial Structures, Inc., 2012 WL 4792906, at *2 (M.D. Fla. Oct. 9, 2012).

The Court finds that justice so requires an order of specific performance to require Defendants to post collateral. NAS has shown that the GIA clearly entitles NAS to this relief, as the GIA requires that upon demand of NAS, Defendants shall immediately deposit with NAS a sum of money as collateral security in an amount that NAS deems sufficient. Additionally, NAS has shown that there is no adequate remedy at law, as "courts have found that a surety's loss of its right to collateralization cannot be adequately remedied through monetary damages." Liberty Mut. Ins. Co. v. Aventura Engineering & Construction Corp., 534 F. Supp.2d 1290, 1321 (S.D.

Fla. 2008); see also Travelers Cas. & Surety Co. of Am. v. Grace & Naeem Uddin, Inc., 2009 WL 1024239, at *2 (S.D. Fla. April 15, 2009); Industrial Commercial Structures, 2012 WL 4792906, at *3.

NAS contends that Defendants should be required to post collateral in the amount of $14,419,789 in order to provide adequate security to NAS, which consists of the following amounts: Pinellas Project: $5,369,789; Volusia Project: $1,050,000; and U.S. Navy Project: $8,000,000. NAS has provided an explanation for how these collateral amounts were determined, including the fact that as of August 6, 2018, there was over $1 million in pending claims as to the three projects.[3] (Doc. No. 35). Accordingly, the Court grants NAS judgment on Count I and will order specific performance to require Defendants to post collateral in the amount of $14,419,789 in order to provide adequate security to NAS.

## B. Contractual Indemnification

In Count V, NAS asserts a claim for contractual indemnification against all three of the defendants. When evaluating NAS's contractual indemnification claim, the terms of the GIA will determine whether Defendants are obligated to reimburse NAS for the amounts sought. See Camp, Dresser & McKee, Inc. v. Paul N. Howard Co., 853 So.2d 1072, 1077 (Fla. 5th DCA 2003).

The GIA provides that "[t]he Indemnitors shall exonerate, hold harmless and indemnify [NAS] from and against any and all Loss." (Doc. No. 1-4). Losses under the GIA include any

---

[3] The evidence before the Court shows that as of August 6, 2018, $3,781,415.13 in claims have been presented to NAS: Pinellas Project: $1,497,951; Volusia Project: $981,999.87; and U.S. Navy Project: $1,301,464.26. (Doc. No. 20-1, ¶ 41; Doc. No. 29). However, of those claims, $2,217,219.29 have been paid: Pinellas Project: $1,102,277.82; Volusia Project: $729,097.20; and U.S. Navy Project: $385,844.27. (Doc. No. 20-1, ¶ 45; Doc. No. 29).

liability, including attorneys' fees, incurred by NAS due to NAS's issuance of surety bonds. (Doc. No. 1-4). The GIA also provides that the Indemnitors' liability is joint and several. (Doc. No. 1-4).

The GIA clearly provides NAS the right to indemnification for all losses that it has incurred. Additionally, NAS has provided evidence that it has paid $2,217, 219.29 in claims through August 6, 2018 for all three projects: (1) Pinellas Project - $1,102,277.82 paid; (2) Volusia Project - $729,097.20 paid; and (3) U.S. Navy Project - $385,844.27. (Doc. No. 20-1 ¶ 45; Doc. No. 29). NAS has also provided evidence that it has incurred costs and attorneys' fees through June 30, 2018 totaling $67,323.75.[4] (Doc. No. 27; Doc. No. 20-1, ¶ 48; Doc. No. 20-2). Finally, NAS has provided evidence that it has paid $69,865.72 for consulting services in connection with the claims made against the bonds. (Doc. No. 20-1, ¶ 48). Based on the evidence before the Court, the Court finds that NAS is entitled to contractual indemnification for all of these amounts.

## IV. Conclusion

Accordingly, it is ORDERED AND ADJUDGED that:

(1) Plaintiff's Motion for Default Judgment as to Defendants The Artec Group, Inc. and the Louis H. Sanchez Revocable Trust and Motion for Summary Judgment as to Defendant Louis Sanchez (Doc. No. 20) is **GRANTED**.

(2) The Clerk is directed to enter judgment in favor of Plaintiff and against

---

[4] The Court has reviewed the evidence in support of this request and finds that the hourly rates of the attorneys is reasonable and that the amount of time that was billed was reasonable. Additionally, at the hearing, NAS stated to the Court that it was reducing the amount of costs being sought by $157.65 - this reduced amount is reflected above.

Defendants on Counts I and V. As to Count I, Defendants are directed to immediately post collateral in the amount of $14,419,789 by depositing such money with Plaintiff in order to provide adequate security to Plaintiff for its potential liability under the bonds. As to Count V, Plaintiff is awarded damages of $2,354,408.76, which consists of the following amounts: (a) $2,217, 219.29 in claims Plaintiff has paid through August 6, 2018 for all three projects; (b) $67,323.75 in costs and attorneys' fees through June 30, 2018; and (c) $69,865.72 for consulting services in connection with the claims made against the bonds. Defendants' liability under Counts I and V is joint and several.

(3) The Clerk is directed to close this case.

**DONE AND ORDERED** at Tampa, Florida, this 10th day of October, 2018.

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record

Defendants Luis Sanchez, The Artec Group Inc., and The Louis H. Sanchez Revocable Trust at the following two addresses:
    (1) P.O. Box 50335, Sarasota, FL 34232
    (2) 376 Interstate Court, Sarasota, FL 34240